**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**April 19, 2021**

# In the Court of Appeals of Georgia

A21A0210. RHODEN v. RHODEN.                    DO-008

DOYLE, Presiding Judge.

Petrona Rhoden, proceeding pro se, appeals from the trial court's grant of a civil restraining order to Carmen Rhoden against Petrona.[1] For the reasons that follow, we reverse.

Petrona is Carmen's niece and was invited by Carmen to live in Carmen's home around May 2019 because Petrona was living with a physically and verbally abusive spouse. In mid-May, Petrona began working at the restaurant of Carmen's daughter, Sharon Davis, but Petrona claimed that Davis was not paying her and

---

[1] Carmen has not filed a brief on appeal, and therefore, this Court accepts as prima facie true Petrona's version of the facts. See *Smith v. Smith*, 350 Ga. App. 647, 648 n. 2 (829 SE2d 886) (2019), citing *Wildes v. Clark*, 347 Ga. App. 348 n. 3 (819 SE2d 511) (2018). See also Court of Appeals Rule 25 (b) (1).

making her work 12 hours a day. After an argument with Davis about the hours she was working, Petrona was told to leave the restaurant on June 4, 2020. Petrona stated that prior to that incident, around May 13-14, Carmen had sent her a text message demanding $600 rent by May 30 or risk eviction.

After the incident at the restaurant, on June 8, 2020, Carmen sent Petrona a text message telling her that Carmen had changed the locks and alarm system code at the house, and Petrona needed to contact Carmen about retrieval of any personal items in the house. On June 11, 2020, Petrona went into Carmen's home to retrieve some items, but the alarm went off, and Petrona called the police.

On July 12, 2020, Carmen filed a Petition for Temporary Protective Order Under the Family Violence Act.[2] She alleged that on June 4, 2020,[3] Petrona slammed a butcher knife into a head of lettuce and waved the knife around at their restaurant. Carmen also stated that Petrona sent her threatening text messages, did not speak in a "level tone" with her, scolding her like a child. Carmen requested that the court order Petrona to stay away from her residence and place of employment.

---

[2] See OCGA § 19-13-1 et seq.

[3] Carmen mistakenly wrote 2019 in the date, rather than 2020, but Petrona admitted in her appellate brief that this event occurred on June 4, 2020.

2

That day, the trial court issued an ex parte temporary protective order ("TPO"), awarding sole use of Carmen's home to her and ordering Petrona, among other things, to leave the residence and surrender any keys or door opening devices to the sheriff, stay 100 yards away from Carmen, and not have any contact with Carmen via telephone, social media, or other method. The court also scheduled a hearing on the matter for June 30, 2020, ordering Carmen and Petrona to appear.

On June 26, proceeding pro se, Petrona filed a letter and motion to dismiss the TPO petition, claiming that Carmen and Davis were withholding money from her job at the restaurant and that Carmen was evicting her wrongfully from the home in violation of Georgia landlord/tenant law. On June 30, 2020, the court held the hearing on Carmen's petition for a TPO.[4] In its written order, the trial court found that there was not sufficient evidence to enter a protective order under OCGA §§ 19-13-1 et seq., or 16-5-94, but the court issued a "civil restraining order" set to expire on December 30, 2020. The court ordered that, inter alia, the ex parte TPO be dismissed, that Petrona could not have any contact with Carmen via any type of communication method, that Petrona could not come within 100 yards of Carmen, and that Petrona

---

[4] No transcript of the hearing appears in the appellate record; however, because the error is apparent on the face of the trial court's order, the transcript was not necessary for our review.

must schedule a time to retrieve her items with a coordinator and be escorted by a sheriff's deputy. Petrona now appeals from the June 30 order.

"The grant or denial of a motion for protective order generally lies within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion."[5]

> The process for obtaining a family violence protective order is set forth in the Family Violence Act, OCGA § 19-13-1 et seq. Once a proper petition has been filed, the Act requires the trial court to hold a hearing within 30 days after the filing of the petition, at which the petitioner must prove the allegations of the petition by a preponderance of the evidence as in other civil cases.[6]

The protective order may be put into effect for up to a year and may later be extended or made permanent after a subsequent hearing.[7] Similarly, upon the petitioner establishing stalking by the respondent by a preponderance of the evidence, a protective order can be put in place for up to a year and renewed thereafter.[8]

---

[5] (Punctuation omitted.) *Little v. Booker*, 346 Ga. App. 305 (816 SE2d 148) (2018), quoting *Pilcher v. Stribling*, 282 Ga. 166, 167 (647 SE2d 8) (2007).

[6] *Wildes*, 347 Ga. App. at 348, n. 4, citing OCGA § 19-13-3 (c)

[7] OCGA § 19-13-4.

[8] See *Little*, 346 Ga. App. at 306 (1). See also OCGA § 16-5-94.

As an initial matter, Petrona's appeal is not moot.[9] Moreover, despite the lack of the hearing transcript, we may review whether Carmen's petition was properly granted because the legal error appears on the face of the trial court's order.[10] The court specifically found that there was insufficient evidence to support a protective order after the hearing. Nevertheless, the trial court then imposed the same conditions on Petrona that it would have been authorized to do under OCGA § 19-13-1, et. seq., or OCGA § 16-5-94 under the nomenclature of a "civil restraining order." Without a finding of the appropriate evidence, however, the court was not authorized to do so.

> In order for the trial court to grant a protective order, OCGA § 19-13-3 (c) provides that the petitioner first prove the allegations of the petition by a "preponderance of the evidence." Absent proof by a preponderance of the evidence, the statute does not authorize the court to provide any relief whatsoever. Thus, it is axiomatic that where the trial court finds insufficient evidence to support the protective order, it no longer has the authority to impose — or to continue — ancillary relief such as [the no contact provision here], because the trial court's

---

[9] See *Smith*, 350 Ga. App. at 649 n. 5 (explaining that although the 12-month protective order had expired, errors in the trial court's order were not moot because they were capable of repetition but likely to evade review), citing *Pate v. Sadlock*, 345 Ga. App. 591, 594 (1) (a) (814 SE2d 760) (2018); *Elgin v. Swann*, 315 Ga. App. 809, 810 (1) (728 SE2d 328) (2012); *White v. Raines*, 331 Ga. App. 853, 854 n. 1 (771 SE2d 507) (2015) .

[10] See *Smith*, 350 Ga. App. at 649 n. 3.

authority to [impose that prohibition] exists only when it has determined that the evidence supports the underlying protective order itself. [Because] the trial court specifically found [at the hearing] that the evidence was insufficient to support the [ex parte protective order], the trial court lacked authority to direct [Petrona to comply with the provisions of the "civil restraining order"].[11]

The same requirements apply to protective orders issued pursuant to OCGA § 16-5-94.[12] Because the relief sought by Carmen was presented only under these statutory authorizations, the court's finding of insufficient evidence to support the protective order required the court to dismiss Carmen's petition.

*Judgment reversed. Reese and Brown, JJ., concur.*

---

[11] (Footnote and emphasis omitted.) *Norman v. Doby*, 321 Ga. App. 126, 130 (2) (741 SE2d 293) (2013).

[12] See *Pilcher*, 282 Ga. at 167-168 (reversing grant of a protective order because no evidence of stalking was presented); *Durrance v. Schad*, 345 Ga. App. 826, 830-831 (2) (a) (815 SE2d 164) (2018) (reversing a grant of attorney fees pursuant to the stalking protective order statute because the trial court found that the petitioner failed to present evidence of stalking by the respondent).